# IN THE COURT OF APPEALS OF IOWA

No. 20-0306
Filed April 15, 2020

**IN THE INTEREST OF A.C.,**
**Minor Child,**

**M.B., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Scott County, Christine Dalton, District Associate Judge.

A mother appeals the termination of her parental rights.  **AFFIRMED.**

Joshua T. Cobie of Brubaker, Flynn & Darland, P.C., Davenport, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Jack E. Dusthimer, Davenport, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and Greer and Ahlers, JJ.

**AHLERS, Judge.**

The mother appeals the termination of her parental rights to her minor child, A.C. She claims A.C. could have been safely returned to her care at the time of the termination hearing and it was not in the child's best interest to terminate rights because of the bond between the mother and child and the fact the child was in the custody of a relative.

At the time of the termination hearing, A.C. was seven years old. She was first adjudicated to be a child in need of assistance (CINA) in a proceeding initiated in 2016 due to substance abuse, mental health, and domestic violence issues of both parents. For a significant period of time during the first CINA proceeding, the child was placed with C.W., the child's maternal aunt. C.W. realized A.C. was severely delayed in several areas of development. A.C. also had a lazy eye over which she had to wear a patch in order to avoid the need for surgery. C.W. was instrumental in arranging for services for A.C., including regular speech therapy due to A.C.'s delayed speech development. C.W. also ensured A.C. wore her eye patch as recommended each day, and C.W. was taught sign language to communicate until she was able to start talking to some degree.

In December 2017, the first CINA proceeding was closed; A.C. was returned to the custody of both parents, with physical care placed with the father under a bridge order entered pursuant to Iowa Code section 232.103A (2017). A.C. only remained in the father's care until May 2018, at which time A.C. was removed from the parents' custody after the father was arrested in Illinois for driving under the influence while A.C. and her older half-sibling were in the car.

Following removal in May 2018, the juvenile court adjudicated A.C. as a CINA a second time and placed her with the mother. The mother was living with C.W. at that time. Shortly after the child was placed in her care, the mother moved out of C.W.'s home, and the problems quickly resurfaced. The mother took A.C. out of preschool and was not addressing her vision or speech issues. The mother was unemployed, and it was unknown how she was paying her bills. She also allowed unsupervised contact with the father in violation of a safety plan. She avoided contact with service providers, and it was discovered she continued to drink alcohol and request drugs via text message to the father. As a result, DHS removed A.C. from the mother's care in May 2019 and placed her in C.W.'s custody. C.W. immediately noticed A.C.'s speech was still very delayed and it appeared her eye problem remained. It appeared A.C. had not been engaged in the various services while in the parents' care.

The termination hearing was held in January 2020, and the mother's parental rights were terminated under Iowa Code section 232.116(1)(d) (2019).[1] She argues termination of her parental rights is not in A.C.'s best interest.[2]

---

[1] The father's parental rights were also terminated. He does not appeal.
[2] In her appellate brief, the mother also challenges the statutory grounds for termination, arguing the State has not shown A.C. could not be returned to her "now or in the near future." However, the juvenile court terminated her parental rights under Iowa Code section 232.116(1)(d) only, which does not require the State to prove A.C. could not be returned to the mother's custody at the time of the termination hearing. See Iowa Code § 232.116(1)(d) (allowing the juvenile court to terminate parental rights if the child was previously adjudicated a CINA under certain conditions, and "the parents were offered or received services to correct the circumstance which led to the adjudication, and the circumstance continues to exist despite the offer or receipt of service"). Because the mother does not address the statutory elements of section 232.116(1)(d) nor cite any authority addressing that provision, we decline to address her argument on appeal. See Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed

We review termination proceedings de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). "Although we are not bound by the juvenile court's findings of fact, 'we do give them weight, especially in assessing the credibility of witnesses.'" *In re M.D.*, 921 N.W.2d 229, 232 (Iowa 2018) (quoting *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)). Our primary concern is the child's best interest. *Id.* When evaluating whether termination is in a child's best interest, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). And "[i]t is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010).

Given these factors, we conclude termination of the mother's parental rights is in A.C.'s best interest. The mother cannot provide a safe, nurturing home for A.C. Throughout both CINA proceedings, the mother was offered several services to help her deal with domestic-abuse and substance-abuse issues and meet A.C.'s needs. She had not engaged with services as requested at the time of the termination hearing. She refused to take drug tests as directed, and she was discovered to be in public while intoxicated and with a methamphetamine pipe in her purse. *See In re H.L.*, No. 18-1975, 2019 WL 478903, at *1 (Iowa Ct. App.

---

waiver of that issue."); *State v. Lange*, 831 N.W.2d 844, 847 (Iowa Ct. App. 2013) ("[W]e refuse to assume a partisan role and undertake a party's research and advocacy when a party's failure to follow the rules would require us to do so to reach the merits of the case.").

Feb, 6, 2019) (collecting cases considering a parent's failure to obtain substance-abuse treatment as a factor weighing in favor of termination). And there is also no evidence in the record that the mother participated in domestic-violence programming, despite repeated incidents of violence between the mother and father and a safety plan prohibiting contact between the parents.

The record also shows the mother is either unable or unwilling to address A.C.'s needs. A.C. is a person with speech, learning, and physical disabilities that require her to participate in speech therapy and counseling, go to doctor appointments regularly, and wear an eye patch for part of the day. The mother did not take A.C. to her appointments, and she did not have A.C. wear her eye patch as directed. By the time A.C. was placed back in C.W.'s care in May 2019, A.C. needed to wear her eye patch for a longer period of time each day because of the mother's failure to have the child wear it as recommended. After getting care of A.C., C.W. discovered A.C. had been wearing reading glasses instead of prescription glasses. A.C. also often arrived late or missed days of school while in the mother's care. At the time of the termination hearing, A.C. was still behind in school.

On the other hand, C.W. has proven to be a capable caregiver for A.C. Since being placed in C.W.'s care in May 2019, A.C. has attended her medical and therapy appointments. C.W. works with A.C. after school and is actively engaged with A.C.'s school to help A.C. catch up. C.W. testified at the termination hearing that she "[a]bsolutely" would be willing to have A.C. stay with her long-term. *See* Iowa Code § 232.116(2)(c) (permitting the court to consider a relative placement's testimony in the best interest analysis). A.C. is integrated with C.W.'s family, and

A.C. calls C.W. "mom." *See id.* § 232.116(2)(b) (permitting the court to consider how well integrated the child is with their placement family in the best interest analysis).

A.C. deserves and needs stability and permanency, which the mother has been unable or unwilling to provide. For the reasons stated, we conclude the elements for termination under Iowa Code section 232.116(1)(d) have been established.

For the same reasons, we find the mother's claim termination is not in the child's best interest to be without merit. The mother has had years to demonstrate an ability to properly parent the child and has failed to do so. The child has languished, at best, in the mother's care, while making noticeable improvement when not in her care. Terminating the mother's parental rights is in the child's best interest.

While not specifically citing Iowa Code section 232.116(3), the mother blends an argument under that Code section into her argument about the child's best interest, so we will address it. The mother argues the child is placed in the custody of a relative and there is a close bond between A.C. and her, both of which could preclude termination under Iowa Code section 232.116(3)(a) and (c). She argues the juvenile court erred by not considering a guardianship instead of termination.

In addressing this final argument by the mother, we note several pertinent legal principles. First, the application of the exceptions to termination set forth in section 232.116(3) are permissive and not mandatory. *In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016). Second, the burden of proving an exception is on the parent

resisting termination.  *In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018).  Finally, a guardianship is not a legally preferable alternative to termination.  *Id.* at 477.

The mother failed to meet her burden.  It is true the child is placed in the custody of a relative, as referenced in section 232.116(3)(a).  However, there is nothing about that custodial arrangement that cuts in favor of avoiding termination and requiring the burden of a guardianship for eleven years until A.C. becomes an adult.  *See id.* (noting the burdens of a guardianship and the unattractiveness of that option when it must be kept in place for a long period of time).  As to the claimed closeness of a bond, in reference to the exception set forth in section 232.116(3)(c), we acknowledge there is some bond between A.C. and her mother, but there is some question as to the closeness of that bond.  A.C. has been out of the mother's care for much of the time since the child was very young, and the child refers to C.W. as "mom."  We do not find the bond to be so close as to warrant avoidance of termination.

We affirm the termination of the mother's parental rights to A.C.

**AFFIRMED.**